IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOHN WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:14-cv-287-WHA |
| ) | (WO) |
| ) | |
| CITY OF DOTHAN, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This action is before the court on Defendant Officer James Culbreath's Motion to Dismiss for Failure to State a Claim (Doc. # 39) filed on June 9, 2014 and Defendant City of Dothan's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. # 43) filed on June 12, 2014.

John Williams ("Williams") filed a Complaint in this case on April 16, 2014. On May 30, 2014, Williams filed his First Amended Complaint. The First Amended Complaint brings claims for unreasonable/excessive force under 42 U.S.C. § 1983 (Count A); negligent hiring, retention, and failure to supervise police officers under 42 U.S.C. § 1983 (Count B); state-law battery (Count C); failure to intervene under 42 U.S.C. § 1983 (Count D); and a "deliberate indifference" due-process violation under 42 U.S.C. § 1983 (Count E). The First Amended Complaint seeks relief from the individual defendants in their individual capacities only.

For reasons to be discussed, Officer Culbreath's Motion is due to be GRANTED IN PART and DENIED IN PART. Further, the City's Motion is due to be DENIED.

## II. STANDARDS OF REVIEW

The court accepts the plaintiff's factual allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). In analyzing the sufficiency of pleading, the court is guided by a two-prong approach: one, the court is not bound to accept conclusory statements of the elements of a cause of action and, two, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief. *See Ashcroft v. Iqbal,* 556 U.S. 662*,* 678-79 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but instead the complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555.

## III. FACTS

The Plaintiff alleges the following facts:

On April 20, 2012, Williams was driving his vehicle in Ozark, Alabama.[1] On that date, law-enforcement officials had received a "tip"[2] from a citizen and were watching Williams from unmarked vehicles.

When Williams discovered that he was being watched, he "exited his vehicle and began to run, not knowing who was pursuing him at the time." (Doc. # 33 ¶ 4). "Suddenly, Ray Mock . . . tackled Williams to the ground, injuring Williams' knee." (*Id.*). While "Williams was on the ground, lying on his stomach, with no weapons in his possession," Chad Hammack, David Saxon, and Jason Adkins of the Dothan City Police Department and Mason Bynum of the Dale County Sheriff's Office "began assaulting Williams with deadly force." (*Id.*). "Specifically, these defendants . . . began to punch, kick, and stomp Williams on and about the head, face, and body, while tasing him repeatedly." (*Id.*). Williams was on his stomach throughout the attack, and "[h]e did not resist or assert any offensive measures once he determined that it was police officers who were pursuing him." (*Id.*). "The assault continued for several moments." (*Id.*).

During the attack, Culbreath, an officer for the Ozark City Police Department, "sat in his police vehicle parked nearby and watched the entire incident without intervening or offering any assistance to Williams." (*Id.*). "After the assault ended, . . . Culbreath transported Williams to the Dale County Jail and processed him in." (*Id.* ¶ 5).

"The individual defendants [were] members in a joint Wiregrass Violent Crime/Drug Task Force, a law enforcement unit which works for and under the control of the City of Dothan, and their penchant for excessive force is well-documented and well-known by the citizens of Dothan." (*Id.* ¶ 4). "In fact, several of these individual officers are the focus of either past or on-going and current investigations relating to brutality and excessive force claims filed by

---

[1] Ozark, Alabama is located in Dale County, Alabama.

[2] The First Amended Complaint does not allege what the "tip" concerned.

citizens." (*Id.*). Despite these complaints, the City of Dothan continued to employ the drug task force officers. (*Id.* ¶ 6).

## IV. DISCUSSION

### A. Claims against Officer Culbreath

Williams brings claims against Culbreath in his individual capacity for state-law battery (Count C); failure to intervene under 42 U.S.C. § 1983 (Count D); and a "deliberate indifference" due-process violation under 42 U.S.C. § 1983 (Count E). Culbreath only seeks dismissal of Counts C and D. For the reasons that follow, Culbreath's Motion is due to be GRANTED as to Count C, but DENIED as to Count D.

#### 1. State-Law Battery

Plaintiff Williams "concedes dismissal of the state law battery claim (Count C) against Culbreath." (Doc. # 42 ¶ 2). Specifically, the battery "claim was not intended to be asserted against Culbreath as it is undisputed that Culbreath did not strike or touch the Plaintiff in connection with this action." (*Id.*). Accordingly, the state-law battery claim against Culbreath is due to be dismissed.

#### 2. Failure to Intervene under 42 U.S.C. § 1983

Defendant Culbreath argues that he is entitled to qualified immunity against the § 1983 failure-to-intervene claim for two reasons. First, Culbreath argues that the First Amended Complaint does not show that Culbreath had a duty to intervene. Specifically, Defendant

Culbreath contends that, because the arrest had a lawful basis,[3] the Plaintiff ran from the police, "the officers did not use any force after the Plaintiff was fully subdued and secured," and "it was not clearly established that police officers could not use punches, kicks, stomps and a Taser to subdue a drug offender who resisted a lawful felony arrest by flight," the Plaintiff has not met his burden to show that Culbreath had a duty to intervene. (Doc. # 40 at 17). Second, the Defendant argues that "[t]he First Amended Complaint does not plausibly demonstrate that Officer Culbreath was close enough to intervene while the alleged use of force was ongoing," "does not plausibly demonstrate that the use of force lasted long enough for Officer Culbreath to intervene," and "does not plausibly demonstrate that Officer Culbreath could actually see the specific applications of force that were allegedly used against the Plaintiff." (*Id.* at 25–26).

In response, the Plaintiff argues that "Culbreath's assertions concerning how long the attack on the Plaintiff lasted, whether or not he could have intervened, whether there was time to say or do anything to prevent the attack, and whether he should ultimately be liable for this claim" cannot support a motion to dismiss "because these are all factual issues that can be fleshed out through discovery." (Doc. # 36 ¶ 4). According to the Plaintiff, "[t]he amended complaint [satisfies pleading requirements because it] asserts that Culbreath watched with apathy and did nothing to prevent Plaintiff's constitutional rights from being violated." (*Id.*). Finally, the Plaintiff argues that running from the police does not validate the use of excessive force.

---

[3] Defendant Culbreath attached two records of conviction for this court to consider with his motion to dismiss. The court notes that, even if the arrest was made for a lawful reason, the officers could still have used excessive force in effecting the arrest. *Bashir v. Rockdale Cnty., Ga.*, 445 F.3d 1323, 1332 (11th Cir. 2006) ("An excessive force claim evokes the Fourth Amendment's protection against the use of an unreasonable quantum of force . . . *in effecting an otherwise lawful arrest*." (emphasis added)). The court further notes that the extent of the force used is a factual issue that cannot be resolved at this stage of the proceedings. Thus, even if the court were to consider or take judicial notice of the attached records of conviction against the Plaintiff, the records would have no impact on the court's analysis of the Plaintiff's excessive-force claim—and thus of the Plaintiff's failure-to-intervene claim—at this point. As a result, the court will not consider the records of conviction for the purposes of this motion to dismiss.

5

As an initial matter, the court agrees with the Plaintiff that many of Culbreath's arguments for dismissal concern factual issues. As the Plaintiff argues, "Culbreath's assertions concerning how long the attack on the Plaintiff lasted, whether or not he could have intervened, [and] whether there was time to say or do anything to prevent the attack . . . are all factual issues." (Doc. # 36 ¶ 4). Moreover, the Defendant's arguments concerning whether the officers stopped using force after Williams was subdued and secured and whether Defendant Culbreath could see the alleged force raise factual issues. Because the court accepts the Plaintiff's allegations as true at this stage, the Defendant's factual arguments fail.

Further, the court finds that the First Amended Complaint states a plausible claim for relief against Defendant Culbreath for the alleged failure to intervene and that Defendant Culbreath is not entitled to qualified immunity at this stage of the proceedings. "To receive qualified immunity, the officer must first show that he acted within his discretionary authority." *Lewis v. City of W. Palm Bch., Fla.*, 561 F.3d 1288, 1291 (11th Cir. 2009). "Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply." *Id.* To determine whether qualified immunity applies, the "court first determines whether the officer's conduct amounted to a constitutional violation" and second "whether the right violated was 'clearly established' at the time of the violation." *Id.* The court can exercise its "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Finally, "'[i]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section

1983,'" but only if the officer was in a position to intervene. *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998) (quoting *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986)).

The First Amended Complaint alleges sufficient facts to state a claim such that Defendant Culbreath's qualified-immunity defense fails at this time. First, it is undisputed for the purposes of this motion that Culbreath was acting in his discretion. Thus, the issue turns to "whether the officer's conduct amounted to a constitutional violation" and "whether the right violated was 'clearly established' at the time of the violation." *Lewis*, 561 F.3d at 1291.

The First Amended Complaint sufficiently alleges that excessive force was used against Williams and that Culbreath failed to intervene. For an excessive-force analysis, the court looks to several factors to determine whether an officer's use of force was objectively reasonable in effecting an arrest, including "'(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically.'" *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) (quoting *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000)). As alleged in the First Amended Complaint, "[a]lthough [Culbreath] did not physically join in the attack [by the other individual defendants], he sat in his police vehicle parked nearby and watched the entire incident without intervening or offering any assistance to Williams." (Doc. # 33 ¶ 4). Further, the First Amended Complaint alleges that Williams watched while the other individual defendants "began assaulting Williams with deadly force" by "punch[ing], kick[ing], and stomp[ing] Williams on and about the head, face, and body, while tasing him repeatedly." (*Id.*). Culbreath allegedly watched this attack and failed to intervene even though "Williams remained on the ground[,] . . . on his stomach during [the] brutal attack," without weapons, and without resisting after determining that his pursuers were police officers.

7

(*Id.*). Moreover, the First Amended Complaint states that the alleged force "continued for several moments." (*Id.*). Based on these allegations, and construing the First Amended Complaint in the Plaintiff's favor, the court finds that the First Amended Complaint "identifie[s] each of the alleged acts of excessive force and the claim that [Culbreath] was in the vicinity of the attacks and [was] capable of intervening to prevent the use of unnecessary force." *Dukes v. Miami–Dade Cnty.*, 232 F. App'x 907, 913 (11th Cir. 2007) (citing *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341 (11th Cir. 2007)); *see also Detris v. Coats*, 523 F. App'x 612, 616–17 (11th Cir. 2013) (reversing a district court's dismissal of a failure-to-intervene claim where the complaint alleged that the defendants "stood by and watched" while other officers used excessive force); *Rivas v. Figueroa*, No. 11-23195-CIV, 2011 WL 5084654, at *3 (S.D. Fla. Oct. 26, 2011) (rejecting an argument that a failure-to-intervene claim was insufficiently pled because the court "disagree[d] that Plaintiff must allege such specific facts [like where the defendant was standing, his proximity to the officer using excessive force, and the duration of the alleged force] to state a claim"). Thus, the Plaintiff has pled sufficient facts "to establish a constitutional violation that would have been reasonably known to the Defendants," and Culbreath's Motion to Dismiss is due to be denied. *Id.*

**B. Claim against the City of Dothan**

Williams brings a claim against the City of Dothan under 42 U.S.C. § 1983 for negligent hiring, retention, and failure to supervise police officers (Count B).[4] The City argues for

---

[4] The Plaintiff styles this claim as "negligent hiring, retention, and failure to supervise police officers." As discussed below, city policymakers' negligence is insufficient for a § 1983 claim requiring deliberate indifference. However, despite the Plaintiff's label for the claim, the Plaintiff alleges reckless conduct on the part of the City. (Doc. # 33 ¶ 6 ("The City of Dothan has a duty to supervise and terminate [the Dothan officer defendants] due to their constant contact with the public in order to safeguard the constitutional rights of the citizens that the defendants are sworn

dismissal of this claim because the Plaintiff "cannot present any factual support for allegations in his Amended Complaint that Defendant's police officers have a history of misconduct such that their retention by Dothan constitutes deliberate indifference to his constitutionally protected rights." (Doc. # 51 ¶ 1). In particular, "Plaintiff clearly asserts that the purpose of discovery is for him to ascertain whether his allegations are true and if they are not, only then is it [the] proper time for this Court to dismiss this lawsuit." (*Id.*). Further, the City argues that "Plaintiff . . . fails to point explicitly to any prior instances of misconduct by any officer of the Dothan Police Department involved in this lawsuit" and "fails to aver how Defendant City of Dothan knew or should have known of any of these officers' alleged but unspecified incidents." (*Id.* ¶ 2).

The Plaintiff contends that he has "allege[d] in his amended complaint . . . a widespread history of excessive force incidents and constitutional violations involving the City of Dothan Police Department which amounts to a *de facto* policy or custom ratifying this behavior and allowing it to continue." (Doc. # 50 ¶ 3). Thus, according to the Plaintiff, he "has met his pleading burden" for the claim against the City for "a failure to remove and/or supervise officers when they do not adhere to [the City's] training and [for] retaining officers who have previously demonstrated a disregard for the constitutional rights of citizens." (*Id.*).

Under 42 U.S.C. § 1983, "a municipality may be held liable for the actions of a police officer only when municipal 'official policy' causes a constitutional violation;" a municipality

---

to serve, and its failure to do so constituted a reckless disregard for those rights.")). Further, the Plaintiff alleges that the Dothan officers' "misconduct was sanctioned and allowed by the city." (*Id.* ¶ 10). Thus, construing the First Amended Complaint in the Plaintiff's favor, the court finds that the Plaintiff has pled more than mere negligence by the City in hiring, retaining, and failing to supervise police officers. *See Keene v. Prine*, 477 F. App'x 575, 583 (11th Cir. 2012) ("[T]he pleading standard set forth in Federal Rule of Civil Procedure 8 evaluates the plausibility of the facts alleged, and the notice stemming from a complaint's allegations. Where those two requirements are met, we have recognized that the form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim.").

cannot be held liable on a theory of respondeat superior liability. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). A plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997). "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Id.* at 404. "Since a municipality rarely will have an express written or oral policy of inadequately training or supervising its employees, the Supreme Court has . . . explained that a plaintiff may prove a city policy by showing that the municipality's failure to train [or supervise its employees] evidenced a 'deliberate indifference' to the rights of its inhabitants." *Gold*, 151 F.3d at 1350. To show the requisite "deliberate indifference," "a plaintiff must present some evidence that the municipality knew of a need to . . . supervise in a particular area and the municipality made a deliberate choice not to take any action;" mere negligence will not suffice. *Id.*; *see also Brown*, 520 U.S. at 407 ("A showing of simple or even heightened negligence will not suffice."). Finally, the Plaintiff "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* at 404.

      The court finds that the Plaintiff has alleged sufficient facts to state a plausible claim for relief against the City. The First Amended Complaint states that the individual defendants in this case were "members in a joint Wiregrass Violent Crime/Drug Task Force" and that, as such, they were "work[ing] for and under the control of the City of Dothan." (Doc. # 33 ¶ 4). Further, the First Amended Complaint alleges that "several of [the] officers are the focus of either past or ongoing and current investigations relating to brutality and excessive force claims filed by

citizens." (*Id.*). Indeed, according to the Plaintiff, "[m]ultiple citizen complaints of excessive force, brutality, and misconduct have been submitted involving the defendants and their willful violation of the constitutional rights of citizens." (*Id.*). But, "[d]espite these complaints, [the drug task force officers] continue to be employed in their law enforcement capacity." (*Id.*). Further, the Plaintiff alleges that "[t]he City of Dothan has a duty to supervise and terminate these individuals due to their constant contact with the public in order to safeguard the constitutional rights of . . . citizens," and the City's "failure to [supervise and terminate the defendants] constituted a reckless disregard for those rights [of citizens], as a direct causal link existed between the defendants' continued employment and the violation of Williams' constitutional rights." (*Id.*). Finally, the Plaintiff alleges that the task force officers' "misconduct was sanctioned and allowed by the city," and "[t]he city's indifference to, and approval of, [the officers' alleged] misconduct constitutes an approved city policy or custom." (*Id.* ¶ 10).

Based on these allegations, the Plaintiff has stated a plausible claim for relief against the City. Specifically, the Plaintiff has sufficiently alleged that the City had a custom of ignoring the use of excessive force by the drug task force officers who are named Defendants in this case. Further, the allegations specify that the City's custom of ignoring the defendants' use of excessive force was the "direct causal link" between the Plaintiff's injury and the alleged excessive force in this case because the excessive-force complaints the City ignored were against the officers who allegedly used excessive force against the Plaintiff. (*Id.* ¶ 4). Finally, although mere negligence is insufficient, the Plaintiff has pled that the City recklessly disregarded the constitutional rights of citizens by ignoring complaints against the officers and that the City sanctioned the officers' misconduct. Thus, accepting the allegations as true, the court finds that

11

the First Amended Complaint sufficiently alleges a plausible claim for relief against the City of Dothan, and the City's Motion to Dismiss is due to be denied.

## V. CONCLUSION

The court finds that Count C of the First Amended Complaint against Defendant Culbreath is due to be dismissed. Further, the court finds that the First Amended Complaint has alleged sufficient facts to state plausible claims for relief against Culbreath for a failure to intervene and against the City of Dothan for improper hiring, retention, and failure to supervise. For the stated reasons,

It is hereby ORDERED as follows:

1. Defendant Culbreath's Motion to Dismiss for Failure to State a Claim (Doc. # 39) is GRANTED as to Count C, but DENIED as to Count D. This case will continue against Culbreath as to Counts D and E.
2. Defendant City of Dothan's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. # 43) is DENIED.

DONE this 25th day of July, 2014.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE