IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOHN WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:14-cv-287-WHA |
| | ) | |
| CITY OF DOTHAN, ALABAMA, et al., | ) | (WO) |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This cause is before the court on two separate Motions for Summary Judgment, one filed by Defendant Dale County Deputy Sheriff Mason Bynum ("Defendant Bynum") (Doc. # 63) and the other filed by the remaining Defendants, including the City of Dothan (Doc # 67).[1] The other individual Defendants are Dothan police officers Ray Mock, Chad Hammack, Jason Adkins, and David Saxon.[2] Also before the court are Plaintiff John Williams' ("Plaintiff") Response in Opposition to the Motions for Summary Judgment (Doc. # 76) and Replies thereto filed by Defendant Bynum (Doc. # 80) and the remaining Defendants (Doc. # 79).

The Defendants have moved for summary judgment on each of three remaining claims in this action. Those claims are a federal § 1983 claim of excessive force in violation of the Fourth Amendment against all individual Defendants, a state law battery claim against the individual Defendants except Defendant Bynum,[3] and a negligent retention and supervision claim pursuant

---

[1] Former Defendant James Culbreath also filed a Motion for Summary Judgment, but the court denied that Motion as moot after the Plaintiff voluntarily moved to dismiss Culbreath as a Defendant. (*See* Docs. # 77, 78.)

[2] The court will refer to these Defendants and Defendant Bynum collectively as "the individual Defendants." Individually, the court will refer to each individual Defendant using his last name, as indicated for Defendant Bynum.

[3] Bynum was excepted from this claim in the Amended Complaint (*See* Doc. # 33 Claim C).

to § 1983 against the City of Dothan.  The court has federal question subject matter jurisdiction over the federal claims and may exercise supplemental jurisdiction over the state law claims.  28 U.S.C. §§ 1331, 1343(a), and 1367.

For the reasons to be discussed, the Motions for Summary Judgment are due to be GRANTED as to the federal claims and the state law claim is due to be dismissed without prejudice.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial.  *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56 (c)(1)(A)–(B).  Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the non-movant must be believed and all justifiable inferences must be drawn in its favor.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

### III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant, the Plaintiff[4]:

On April 20, 2012, the Plaintiff attended a family social gathering during the day.  While he was there, he received a call from a woman with whom he had been previously acquainted. The woman knew the Plaintiff's then-wife's cousin.  Unbeknownst to the Plaintiff, on this occasion the woman was also serving as a confidential informant (CI) for the Wiregrass Violent Crime Drug Task Force ("the Task Force").  She asked the Plaintiff for half an ounce of methamphetamine.  The Plaintiff told the CI he could procure the methamphetamine for her. After he left the social gathering with his then-wife and children, he dropped them off at the family home.  He then went to see an acquaintance who fronted him the methamphetamine to sell to the CI.  After he received the methamphetamine, he drove to the CI's home.  By the time he traveled to meet the CI at her home, it was night, and therefore completely dark outside.

---

[4] Wherever possible, the facts underlying this case have been taken from the Plaintiff's account contained in his deposition.  (*See* Docs. # 76-1 and # 76-2.)  Throughout the opinion the court will cite to the pages of the deposition as numbered in the deposition itself, rather than the page numbers assigned after filing.

Earlier that day, members of the Task Force met to discuss the information they had received from the CI regarding the planned drug transaction. Before the Plaintiff arrived at the CI's home, all of the individual Defendants and former Defendant Culbreath were positioned at the home, waiting for the Plaintiff to arrive. Defendants Mock and Hammack were parked in the yard, Defendants Adkins and Saxon were parked at a nearby residence, and former Defendant Culbreath was parked two driveways down from the CI's home. Defendant Bynum was also present waiting for the Plaintiff to arrive.

As the Plaintiff arrived at the CI's home, he was holding the methamphetamine in his lap, packaged in a sandwich bag. He was not carrying a firearm. When he pulled into the driveway, he saw a black SUV parked there. He speculated that the vehicle belonged to the CI's boyfriend, who he thought would not be home at the time of the planned transaction. This caused him to back his vehicle out of the driveway in order to leave. While he was backing up, he saw flashing blue and red police lights illuminate in the vehicle. He continued to back up in his vehicle, which then fell into a ditch on the other side of the street from the CI's driveway. After the vehicle went into the ditch, the Plaintiff left the vehicle and began to flee on foot in an attempt to get away from the police that he now knew were pursuing him. He was still holding the methamphetamine when he began to run away.

After he began to run, the Plaintiff was tackled by one of the police officers on the scene, Officer Mock. Shortly before he was tackled, he threw the methamphetamine in hopes of getting rid of it. After the police officer tackled him, Plaintiff was positioned on the ground on his stomach. At that point, one or more of the officers began to strike or beat him on the face and on his head. He heard one officer use a racial epithet to say he planned to "teach [the Plaintiff] a

lesson."[5]  The Plaintiff fell to the ground with his hands outstretched in front of him, and when the officers began to strike him he moved his hands in an attempt to "cover up" his head and protect himself from the blows inflicted by the officers.[6]  The officers eventually tased the Plaintiff twice, which prevented him from being able to move.  After tasing him, the officers moved his hands behind his back and handcuffed him.  The entire encounter lasted approximately thirty to forty-five seconds.  No force was used against the Plaintiff after he was handcuffed and placed in a patrol car. The force inflicted on the Plaintiff before he was handcuffed caused him some degree of injury, to the extent that the Plaintiff believed his nose had been broken.

## IV. DISCUSSION

**A.    § 1983 Excessive Force Claim Against Defendants Adkins, Mock, Saxon, Hammock, and Bynum**

The Plaintiff alleges that the individual Defendants used excessive force in effecting his arrest on April 20, 2012, by beating him while his arms were outstretched above his head and he was on his stomach, and as he moved his hands over his head in an attempt to protect himself from the force being used.  The individual Defendants have all raised the defense of qualified immunity.  They allege that under qualified immunity, the burden shifts to the Plaintiff to show a constitutional violation, and that he has not met his burden.  They further argue that even if the Plaintiff has met the burden to establish a constitutional violation, the right violated was not clearly established by law.  The court will discuss each aspect of the qualified immunity analysis below.

---

[5] Doc. # 76-1 at 125:17–20.
[6] Doc. # 76-2 at 237:16–22.

### i.   Qualified Immunity Burden of Proof

The individual Defendants have raised the defense of qualified immunity.  Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial. *Ansley v. Heinrich*, 925 F.2d 1339, 1345 (11th Cir. 1991).  "Qualified immunity protects government officials from liability for civil damages unless they violate a statutory or constitutional right that was clearly established at the time the alleged violation took place." *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013).  It shields from litigation "all but the plainly incompetent or one who is knowingly violating the federal law." *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013).

The threshold issue for qualified immunity eligibility is whether the Defendants were acting within their discretionary authority at the time of the alleged violation. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  If they were, then the burden shifts to the Plaintiff to show that the Defendants are not entitled to qualified immunity. *Id.*  Here, the Plaintiff's Response in Opposition describes this burden-shifting test without expressly conceding or contesting the issue of whether the individual Defendants were acting within their discretionary authority.  (Doc. # 76 at 5–6.)  The court finds that the individual Defendants were acting within their discretionary authority because they were acting within the scope of their law enforcement duties in making an arrest.  Multiple Eleventh Circuit decisions have concluded that making arrests is an activity squarely within a police officer's discretionary authority. *See, e.g.*, *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) ("It is undisputed that Officers Shanley and Lovett were acting within their discretionary authority while tracking and arresting Edwards."); *Lee*, 284 F.3d at 1194 ("In this case, there can be no doubt that Ferraro was acting in his discretionary capacity when he arrested Lee.").  The individual Defendants were acting in their

discretionary authority when they apprehended and arrested the Plaintiff.  Therefore, the court will proceed to the required two-step qualified immunity analysis, keeping in mind both that the burden of persuasion is on the Plaintiff, and that the record must be construed in the light most favorable to him.

### ii.  Qualified Immunity Analysis

To determine whether a defendant is entitled to qualified immunity, the court must undertake "the following two-pronged inquiry: (1) whether the facts that [the Plaintiff] has shown make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct."  *Gilmore*, 738 F.3d at 273 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).[7]  Pursuant to Supreme Court precedent, the inquiry may be conducted in whichever order best suits the instant case, as district courts and courts of appeals are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 555 U.S. at 236.  Here, the court will first consider whether the facts shown by the Plaintiff establish a constitutional violation.

### a.  The Plaintiff has not satisfied his burden of establishing a constitutional violation.

The Eleventh Circuit recently summarized the proper analysis for excessive force claims as follows:

> Freedom from unreasonable searches and seizures under the Fourth Amendment "encompasses the right to be free from excessive force during the course of a criminal apprehension." *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009). Even so, the right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1871–72, 104 L.Ed.2d 443 (1989).

---

[7] The court notes that it is Plaintiff's burden to show "both that the defendant committed a constitutional violation and that the law governing the circumstances was already clearly established at the time of the violation." *Youmans v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010).

Indeed, "the typical arrest involves some force and injury." *Reese v. Herbert*, 527 F.3d 1253, 1272 (11th Cir. 2008). We judge excessive force claims "under the Fourth Amendment's objective reasonableness standard." *Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009) (quotation marks omitted). That standard asks whether the force applied "is objectively reasonable in light of the facts confronting the officer," a determination we make "from the perspective of a reasonable officer on the scene" and not "with the 20/20 vision of hindsight." *Id.* (quotation mark omitted). We consider factors including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872. We also consider "the need for the application of force, . . . the relationship between the need and amount of force used, and . . . the extent of the injury inflicted." *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002).

*Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1353 (11th Cir. 2015). In the *Mobley* decision, the court clarified that this analysis should not include any consideration of whether the force was used "in good faith or sadistically or maliciously," as some previous decisions had suggested. *Id.* at 1354. Consistent with Supreme Court precedent, the proper standard is objective reasonableness. *Id.*

The Plaintiff contends that his evidentiary submissions show that his constitutional right to be free from excessive force was violated because the evidence, viewed in the light most favorable to him, reveals that he "surrendered himself and was flat on the ground ready to be handcuffed before the defendants savagely attacked [him]." (Doc. # 76 at 8.) Plaintiff summarizes the force used by stating that "the officer who was on [his] back placed his arm around [the Plaintiff's] neck and lifted his head upward to expose [his] face to several closed fist punches," severely injuring the Plaintiff. (*Id.*) The Plaintiff's briefing does not specifically address the three factors set out by the Supreme Court in *Graham v. Connor*—"the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396.

The individual Defendants argue that under the factors set out in *Graham*, the undisputed facts of this case do not amount to force that was objectively unreasonable. The Defendants contend that all three factors favor them. (Doc. # 64 at 12; Doc. # 68 at 8.) Specifically, they maintain that the distribution of illegal drugs is a serious offense, that a reasonable officer could have believed that the Plaintiff possessed a firearm, and that the Plaintiff was fleeing the scene and resisting arrest.

Having considered the arguments of both sides, the court finds the Defendants' arguments persuasive. First, distributing drugs is a serious offense. Second, although the Plaintiff undisputedly did not possess or brandish a firearm during his encounter with the individual Defendants, the Defendants did not have any way to determine whether the Plaintiff had a firearm because they did not have a chance to pat him down under the circumstances. It is widely known that drug dealers often carry firearms. Third, it is undisputed that the Plaintiff attempted to flee first in his vehicle and then on foot.

The closest issue in this analysis is whether the Plaintiff was resisting arrest.[8] If a reasonable officer should have believed that the Plaintiff was completely subdued and compliant, as the Plaintiff argues he was, then the force used in this case is more likely to constitute excessive force. As discussed above, the Plaintiff argues that he was not resisting the individual Defendants' efforts to arrest him because he was on his stomach with his hands outstretched above his head. In response, the Defendants argue that the Plaintiff moving his hands to cover

---

[8] Because the court finds that a reasonable officer could have believed the Plaintiff was resisting arrest, it does not reach the issue of whether the Plaintiff's guilty plea to the charge of resisting arrest creates an issue of collateral estoppel. A court in this district has previously concluded that "even if collateral estoppel does not bar a § 1983 suit, it may limit what facts a § 1983 plaintiff can dispute on defendant's motion for summary judgment based on qualified immunity." *M.D. ex rel. Daniels v. Smith*, 504 F. Supp. 2d 1238, 1252 (M.D. Ala. 2007).

his head could reasonably have been construed as resistance, and was in fact resistance to complying with the Defendants' instructions so that he could be handcuffed.[9]

In determining this aspect of the analysis, the court finds the Eleventh Circuit's recent decision in *Mobley* both illuminating and controlling. In that case, the § 1983 plaintiff was arrested following a high speed chase immediately after he struck a police officer with his vehicle. *Mobley*, 783 F.3d at 1350–51. After he exited his vehicle and was eventually surrounded by the police, they shoved him to the ground to begin the process of arresting him. *Id.* The final part of the altercation between the *Mobley* plaintiff and the arresting police officers closely resembles the facts of the instant case. As the Eleventh Circuit summarized:

> While Mobley was on the ground, the officers struck and kicked him, including in the face. The officers' blows broke Mobley's nose, his teeth, and his plastic dental plate. He covered his face with his hands to protect it from the officers' blows. The officers also tased Mobley repeatedly while he was on the ground. Mobley eventually gave up, moved his hands from in front of his face and placed them behind his back. An officer handcuffed him, after which he was given medical attention.

*Id.* at 1351 (footnote omitted).

In reviewing the district court's decision in *Mobley*, the Eleventh Circuit found it critical that the plaintiff was resisting being handcuffed up until the point that he gave up and submitted to handcuffing, and that no force was used after he was restrained. The panel noted that "force applied while the suspect has not given up and stopped resisting and may still pose a danger to the arresting officers, even when that force is severe, is not necessarily excessive." *Id.* at 1356. The court highlighted the fact that the plaintiff "concede[d] that he had refused to surrender his hands," and that "the officers did not apply any force after he finally surrendered his hands to be

---

[9] The Defendants have presented evidence stating that the Plaintiff struck or punched one or more of the officers and thus affirmatively fought back against them. Because the Plaintiff has denied hitting or punching the officers (Doc. # 76-2 at 193:16–194:7), the court resolves this disputed fact in the Plaintiff's favor for the purposes of ruling on the Motions for Summary Judgment.

cuffed," unlike the plaintiffs in other cases with the opposite result. *Id.* The panel concluded that the plaintiff had not "pointed to any circumstances before he quit resisting and was handcuffed that show the force applied against him was objectively unreasonable," and that the defendants were therefore "entitled to summary judgment on the ground of qualified immunity because under the circumstances their conduct did not violate Mobley's constitutional rights." *Id.* (footnote omitted).

In this case, the most critical facts are strikingly similar to the facts in *Mobley*. In both cases, the plaintiff was lying on the ground and covering his head and face in an attempt to defend himself from substantial force being inflicted upon him by police officers trying to effectuate an arrest. In both cases, the force stopped once the plaintiff's arms went behind his back for handcuffing, and no force was applied after handcuffing. In *Mobley*, the Eleventh Circuit concluded that under these circumstances the defendants were entitled to qualified immunity because the plaintiff had not shown an excessive force violation.

In light of this precedent, the court cannot accept the Plaintiff's assertion that he was not resisting arrest from the viewpoint of a reasonable officer. Until he put his hands behind his back or was immobilized by the tasing, the individual Defendants could have reasonably perceived his actions as resistance. Furthermore, while the Plaintiff's summary of the facts states that the individual Defendants "continued to beat [him] after they rendered him incapable of complying to their commands by locking his body up through shooting him twice with tasers" (Doc. # 76 at 3), the deposition testimony cited is not entirely consistent with that description. Specifically, the Plaintiff testified that he was tased after the beating stopped.[10]

---

[10] *See* Doc. # 76-2 at 240:22–241:7 ("Q: How many seconds into the thirty seconds or forty-five seconds was it before you were tased? Did that come at the very end? A: Yeah, after they stopped beating me. Q: The tasing came in about the last thing before you were handcuffed? A: Yes, sir.").

The court briefly notes that the Plaintiff's evidence of the use of a racial epithet does not play a role in the analysis because the Eleventh Circuit is clear that the "objective reasonableness" standard applies to excessive force claims, and the court is not to consider whether the force was used "in good faith or sadistically or maliciously," as discussed above. *Mobley*, 783 F.3d at 1354.

In summary, the court concludes that like the plaintiff in the *Mobley* case, the Plaintiff has not "pointed to any circumstances before he quit resisting and was handcuffed that show the force applied against him was objectively unreasonable."  783 F.3d at 1356.  The Plaintiff was being arrested for a serious offense, he fled both on vehicle and on foot, and the individual Defendants could have reasonably believed he was armed.  The closest issue is whether the Plaintiff was resisting arrest, but the parties do not dispute that no force was used after the Plaintiff was handcuffed, nor do they dispute that during the beating he was moving his hands in an attempt to "cover up."  The entire incident between the time the Plaintiff was tackled while in flight and the time he submitted to be handcuffed was thirty to forty-five seconds.  Under *Mobley* and other Eleventh Circuit precedent, the Plaintiff has not shown that the force used was objectively unreasonable from the point of view of the arresting officers, the individual Defendants.  The Plaintiff has not met his burden of showing that there was a constitutional violation.

> **b.   Even if the record indicated a possible constitutional violation, the Defendant would be entitled to qualified immunity because the right violated was not clearly established.**

For the reasons discussed above, the court concludes the Plaintiff has not presented facts that establish a constitutional violation.  Even if he had, the constitutional violation was not

clearly established by law because relevant precedent could have caused a reasonable officer to believe he was acting within constitutional bounds.

The Plaintiff argues that "previous case law gave any reasonable officer fair warning that inflicting injury on a person who [has] already surrendered is illegal." (Doc. # 76 at 8.) The Plaintiff's briefing cites several cases that he contends stand for the proposition that the force used against him under the circumstances shown by the evidence violated a right clearly established by law.

Under Eleventh Circuit law, especially the *Mobley* decision, the record in this case does not indicate that force was used on the Plaintiff when he had "already surrendered." Furthermore, the cases cited by the Plaintiff to support his contention that there was a violation of a clearly established right are readily distinguishable.

The Plaintiff has cited *Smith v. Mattox*, 127 F.3d 1416 (11th Cir. 1997), and *Sheth v. Webster*, 145 F.3d 1231 (11th Cir. 1998), for the proposition that excessive force was shown where "non-threatening persons were injured by police effecting an arrest with unnecessary force." (Doc. # 76 at 7.) In *Smith*, the police officer broke the plaintiff's arm in the process of handcuffing him, after the plaintiff "docilely submitted to arrest upon [the plaintiff's] request for him to 'get down.'" 127 F.3d at 1418. The court in *Smith* stated that the case was "very close" and assumed that the plaintiff "was offering no resistance *at all*," in concluding that qualified immunity was not available at the summary judgment stage. *Id.* at 1419–20. Here, the undisputed facts show that the Plaintiff did not "docilely submit[]" to arrest, and from the point of view of a reasonable officer could have been viewed as resisting.

Additionally, in *Sheth*, the defendant police officer arrested a motel owner without probable cause, and in doing so shoved her against a vending machine, kneed her on the

stomach, and twisted her arm while handcuffing her.  145 F.3d at 1234.  The court found there

was "no evidence in the record to suggest that plaintiff posed a danger to the officer or others,"

and that there was no justification for the defendant's use of force.  *Id.* at 1238.  In this case, the

Plaintiff may have posed a danger to the individual Defendants because he was fleeing, first in a

vehicle and then on foot, and the officers could have reasonably believed he was armed.

Furthermore, he continued to move his hands near his head while the officers instructed him to

put them behind his back for handcuffing.

 In summary, the Plaintiff has summarized the points of law in the cases but has not

shown with evidence that he was "non-threatening" to the police until he was restrained during

his arrest.  Because of the factual differences between the cases the Plaintiff cited and his own

case, he has not shown that the individual Defendants violated a clearly established right.

**B.**   **Negligent Supervision and Retention Claim Against the City of Dothan**

 The Plaintiff has alleged a claim of negligent supervision and retention against the City of

Dothan pursuant to § 1983.  Local governments may be held liable for constitutional violations

of their employees pursuant to § 1983 when the local government's "policy or custom" leads to

the violation.  *Monell v. Dept' of Social Servs. of N.Y.*, 436 U.S. 658, 694–95 (1978).  To make

out such a claim, the plaintiff "must show: (1) that his constitutional rights were violated; (2) that

the municipality had a custom or policy that constituted deliberate indifference to that

constitutional right; and (3) that the policy or custom caused the violation."  *McDowell v. Brown*,

392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388

(1989)).

 Because the first element of the test for a claim of municipal liability under § 1983 is a

violation of the plaintiff's constitutional rights, where such a violation has not been established

no further analysis is needed.  Without the violation, a municipal liability claim cannot prevail. *See, e.g.*, *Garcynzski v. Bradshaw*, 573 F.3d 1158, 1170 (11th Cir. 2009) (noting that "[a]nalysis of a state entity's custom or policy is unnecessary . . . when no constitutional violation has occurred," and citing additional cases for the same proposition).  Here, the court has determined that the Plaintiff has not shown that there was a constitutional violation.  Therefore, no further analysis is needed for the court to conclude that City of Dothan's Motion for Summary Judgment on the Plaintiff's claim against it is due to be GRANTED.

**C.     State Law Battery Claim**

For the reasons discussed above, the court has found that the federal claims against the individual Defendants and the City of Dothan are due to be resolved in favor of the Defendants. Section 1367(c)(3) provides that "district courts may decline to exercise supplemental jurisdiction over a claim if . . . the district court has dismissed all claims over which it has original jurisdiction." *See also Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."). Because the federal claims against the Defendants over which this court had original jurisdiction are due to be resolved against the Plaintiff, the court will decline to exercise its supplemental jurisdiction over the state law claims and they will be dismissed without prejudice.  *See* 28 U.S.C. § 1367(c)(3).

### IV. CONCLUSION

For the reasons discussed above, it is hereby ORDERED as follows:

1.  The Defendants' Motions for Summary Judgment (Docs. # 63, 67) are GRANTED as to the § 1983 claims against the individual Defendants and the City of Dothan.

2. The Plaintiff's state law battery claim against Defendants Adkins, Mock, Hammack, and Saxon is DISMISSED without prejudice.

3. A separate Judgment will be entered in accordance with this Memorandum Opinion and Order.

DONE this 3rd day of August, 2015.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE

16